## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **MICHAEL GAY**, individually on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>**US DEALER SERVICES, Inc.**, **GANNA FREIBERG**, and **MICHAEL SHAFTEL**,<br><br>　　　　　　Defendants. | Case no.<br><br>**CLASS ACTION**<br><br>**JURY DEMAND** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Michael Gay ("Plaintiff" or "Plaintiff Gay") brings this Class Action Complaint and Demand for Jury Trial against Defendants US Dealer Services, Inc. ("US Dealer Services"), Ganna Freiberg ("Freiberg") and Michael Shaftel ("Shaftel"), to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited, pre-recorded calls to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' actions. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.　　　Plaintiff Gay is an Albuquerque, New Mexico resident.

2.     Defendant US Dealer Services is a New Jersey corporation incorporated in New Jersey and headquartered in Van Nuys, California. US Dealer Services conducts business throughout this District and the United States.

3.     Defendant Freiberg is an individual who resides in California who owns and/or manages US Dealer Services which conducts business throughout the District and the United States.

4.     Defendant Shaftel is an individual who resides in New Jersey who owns and/or manages US Dealer Services which conducts business throughout this District and the United States.

## JURISDICTION AND VENUE

5.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6.     This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, and because the wrongful conduct giving rise to this case was directed from the Defendants to this District.

## TELEMARKETING INTRODUCTION

7.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any

telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227

(b)(1)(A)(iii).

8.     According to findings by the Federal Communication Commission

("FCC"), the agency Congress vested with authority to issue regulations implementing

the TCPA, such calls are prohibited because, as Congress found, automated or

prerecorded telephone calls are a greater nuisance and invasion of privacy than live

solicitation calls, and such calls can be costly and inconvenient.

9.     While "prior express consent" is required for all automated and prerecorded

calls, in 2013, the FCC required "prior express written consent" for all such

telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e. that the
> consumer will receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the consumer
> designates.[] In addition, the written agreement must be obtained "without
> requiring, directly or indirectly, that the agreement must be executed as a
> condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of*
*1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).*

10.     "Telemarketing" is defined as "the initiation of a telephone call or message

for the purpose of encouraging the purchase or rental of, or investment in, property,

goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

11.     When Congress enacted the TCPA in 1991, it found that telemarketers

called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

12.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

13.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

14.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

15.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last 6:19-cv-02008-BHH Date Filed 07/18/19 Entry Number 1 Page 4 of 10 5 visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. See id.

16.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

17.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

18.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## INTRODUCTION TO MICHAEL SHAFTEL, GANNA FREIBERG AND THEIR EXTENDED CAR WARRANTY ENTITIES

19.     US Dealer Services sells extended car warranty plans to consumers.[3]

20.     The domestic corporate registry for US Dealer Services is registered in New Jersey.[4]

21.     The California corporate registry for US Dealer Services displays the name NCWC Dealer Services, Inc. ("NCWC") in its Statement of Information and other registered documents, listing the name Ganna Freiberg as the CEO, Secretary and Chief Financial Officer.[5]

22.     Both US Dealer Services and NCWC are located in the same location in California:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] http://www.usdealerservices.com/index.php/about
[4] https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName
[5] https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=03613641-17211525





23.     According to a lawsuit involving N.C.W.C., Inc. (acting as the Plaintiff),

US Dealer Services is a d/b/a of NCWC:

6

https://www.google.com/maps/place/6837+Hayvenhurst+Ave,+Van+Nuys,+CA+91406,+USA/
@34.1948458,-
118.4924395,3a,75y,296.85h,85.56t/data=!3m6!1e1!3m4!1s8aReahTCGgeY9_3Xt74Xtw!2e0!7i
16384!8i8192!4m5!3m4!1s0x80c299e4033e36f3:0xdd7719ce0b057bc7!8m2!3d34.1949498!4d-
118.4928991

N.C.W.C., INC., d/b/a, U.S. Dealer
Services, a New Jersey corporation,
PALMER ADMINISTRATIVE
SERVICES, INC., d/b/a Liberty
Automotive, a New Jersey corporation, 7

24.     NCWC is an administrator of extended car warranties.[8]

25.     NCWC and N.C.W.C. are the same company, as is shown on the

NCWCinc.com website that references a press release for NCWC Dealer Services.[9] [10]

26.     According to NCWCinc.com, Michael Shaftel is the CEO of NCWC:



**Team Leaders**

Key to any successful business is a wide range of management skill and experience. Our team members have a vast range of industry experience that allows us to quickly understand key issues and identify the right solutions to meet the needs of our customers and partners. With this we are pleased to introduce you to our leadership team.


**Michael B Shaftel**
President and CEO
mshaftel@ncwcinc.com
800-599-9557 x331


**Charles K. Miller**
CFO
cmiller@ncwcinc.com
800-599-9557 x317


**Jim Arietta**
CTO
jarietta@ncwcinc.com
800-599-9557 x311


**Joann Blasi**
Internal Operations
jblasi@ncwcinc.com
800-599-9557 x302


**Scott Mindlin**
Financial Controller
smindlin@ncwcinc.com
800-599-9557 x312


**Megan Lurker**
Customer Service Manager
mlurker@ncwcinc.com
800-599-9557 x348


**Anthony Ragucci**
Claims Manager
aragucci@ncwcinc.com
800-599-9557 x318


**Magoria Bradley**
Human Resource Manager
mbradley@ncwcinc.com
800-599-9557 x332                    [11]

---

[7] Case 6:20-cv-00397-RBD-EJK – filed 03/05/2020
[8] https://www.ncwcinc.com/web/corporate/about
[9] https://www.ncwcinc.com/web/corporate/press
[10] https://www.carsflow.com/ncwc-inc-dealer-services.html
[11] https://www.ncwcinc.com/web/

27.     In summary, NCWC operates using the d/b/a US Dealer Services.

28.     Shaftel and Freiberg are the two controlling individuals managing NCWC and US Dealer Services.

29.     Shaftel also owns/manages Palmer Administrative,[12] Royal Protection Plan[13] and Liberty Automotive Protection.[14]

## US DEALER SERVICES MARKETS EXTENDED CAR WARRANTY PLANS USING TELEMARKETING THAT INVOLVES THIRD-PARTY COMPANIES

30.     NCWC invites third-party companies to sign-up on its website ncwcinc.com to become marketers of NCWC's extended car warranty plans.[15]

31.     In addition, NCWC does telemarketing using its own staff.

32.     In 2010, a Twitter user named Michael Shaftel who had previously posted about vehicle protection services put up a post about being in the Dominican Republic to check out call centers:

michael shaftel @mshaftel · Jan 18, 2010
in am Dominican Republic for the day checking out call centers for customer service overflow, for off hours [16]

33.     There is a NCWC located in Cebu, Philippines, who hires outbound telemarketers.[17]

---

[12] https://apnews.com/7be5e94808797e86c6e8ed55f53e0735
[13] https://www.prnewswire.com/news-releases/royal-protection-plan-provides-expert-advice-on-auto-extended-warranties-300525186.html
[14] https://www.prnewswire.com/news-releases/liberty-automotive-protection-announces-unexpected-growth-in-interstate-business-300519668.html
[15] https://www.ncwcinc.com/web/resources/producers
[16] https://twitter.com/mshaftel
[17] https://www.facebook.com/pg/ncwcinc/posts/?ref=page_internal

34.     Shaftel himself can be seen on the NCWC Philippines Facebook posing with different employees that he gave presents to, presumably for sales performance:



35.     Based on the above, it is clear that Shaftel is directly involved in the management of the NCWC Philippines call center that places outbound sales calls to consumers.

36.     Regardless of whether Shaftel and/or Freiberg are directing agents to place the calls, or using third-party marketers to place calls to consumers, the Federal Communication Commission has instructed that entities such as those controlled by Shaftel and Freiberg may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are

---

18
https://www.facebook.com/ncwcinc/photos/a.313383238839857/484067401771439/?type=3&theater

identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling*

*Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling")*

*(citations omitted).*

37.     Shaftel and Freiberg should be aware of the unlawful telemarketing that is being done on behalf of US DEALER SERVICES.

38.     The US DEALER SERVICES Better Business Bureau ("BBB") is filled with complaints from consumers about unsolicited calls they received. This is a small sampling of those BBB complaints, including some direct responses from US DEALER SERVICES:



08/07/2020

I have called to be removed from their calling list 7 times. The harassing calls continue to occur every 2 days. After asking to be removed from the calling list and being told that I have been I keep receiving calls for a non existent warranty. Both of my vehicles are fully covered through dealership warranties and will not be expiring any time soon.

**Desired Outcome**
I would like to not be contacted by this company again.



**US Dealer Services, Inc. Response**                                          08/10/2020

Hello ***. Thank you for contacting us. We have labeled your request urgent and complied with your inquiry. We have added your number to our company wide DO NOT CALL LIST. You will not receive any solicitation from us. Please feel free to reach out to us with any additional questions at; X (XXX) XXX XXXX Thank you again. [19]

---

[19] https://www.bbb.org/us/ca/van-nuys/profile/auto-service-contract-companies/us-dealer-services-inc-1216-358292/complaints

07/30/2020

I receive multiple calls from this company weekly after asking many times to be removed from the **** calling. This company is wasting my valuable time by **** calling me multiple times a week. They appear to contract with a foreign company because the person who you get connected to at first speaks poor English. I originally tried pressing the number to be removed from their list. That didn't work. I tried getting them on the line and asking them to remove my number and that didn't work. When asked who they are, I would get hung up on. I finally gave them the information they asked for about one of my cars. The foreign person transferred me to the US where the English speaking woman gave me the cost to extend my warranty on my car. I asked who the service was through and she told me US Dealer Services. After she went through the warranty details and gave me the cost to purchase, she asked me what payment method I would prefer. I politely said I did not care for the warranty that I went through this just to find out the name of the company which I plan to take to take to an attorney to investigate filing a class action law suit for **** calls and failure to remove my number and many others from their call list. She quickly hung up. Remove my number from your **** calling.

20



07/27/2020

Callers use spoofed local numbers, operators hang up on me when I ask questions, and I cannot get put on a NO CALL list. See above.

**Desired Outcome**
I want the business to stop contacting me.



**US Dealer Services, Inc. Response**                                    07/27/2020

Hello ****, We ran a report using the number you provided. Our system indicates no outbound calls were made to XXX XXX-XXXX . I believe you may have been contacted by a different agency. We apologize for any inconvenience. Your number has been added to our company wide DO NOT CALL LIST as you have requested. You will not be receiving any subscription calls regarding our product. Please feel free to call our customer service number with any additional questions *****************

21

07/23/2020

I am on the do not call list but they still call. I never did business with them and have asked to be removed from there list. but they still call. stop the spam calls, your breaking the law!!!

**Desired Outcome**
follow the law and stop calling

22

---

[20] *Id.*
[21] *Id.*
[22] *Id.*

07/21/2020

I'm on do not call list. ***** at US Dealer Services trued to sell me auto warranty. Said co was based in NJ. He hung up when asked for info on co. Incessant calls for extended auto warranty. Not legit. Call came fro XXX-XXX-XXXX. Would not let me verify he was with company or ask to be removed from list as he hung when I started asking questions to verify he was with company.

**Desired Outcome**
Modify US Dealer Services, Inc.'s A+ rating. Company is uses ILLEGAL telemarketing practices.

23



06/30/2020

Company continues to call after several request to stop. During call very nice till you ask about company then they hang up without giving their phone Calling after requesting them to stop several times.

**Desired Outcome**
Trying to get them from calling.



**US Dealer Services, Inc. Response**                                07/02/2020

Hello *****, I just finished running a report in search of any activity regarding XXX XXX-XXXX . I found no inbound or outbound activity associated with your primary phone number. I believe you may have interacted with another business entity. No representative in our employ would abruptly discontinue a call without facing disciplinary action. Regardless, I have added your number to our internal Do NOT CALL LIST as well as our company wide DNC list. I can guaranty you spoke with a different company. Our representatives are always available and ready to assist you. Please feel free to reach out to me with any future inquiries at ****************

24

39.     Despite the numerous complaints directed US Dealer Services, Shaftel and Freiberg continue to contract with third-party companies who rely on unlawful telemarketing to generate sales, in addition to using their own staff to place unsolicited calls to consumers.

## LEGALITY OF PRE-RECORDED TELEMARKETING CALLS

40.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or pre-recorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of*

---

[23] *Id.*
[24] *Id.*

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

41.    Yet in violation of this rule, the Defendants fail to obtain any express

written consent prior to placing pre-recorded solicitation calls to cellular and landline

telephone numbers.

42.    There are numerous complaints posted online from consumers complaining

about unsolicited calls they received from, or on behalf of the Defendants including:

**NCWC BBB Page:**

- "been auto dialed by them several times and have recorded several conversations with them will be filling criminal harassment complaints after writing this…"[25]
- "How are these people in business!? They refuse to take you off their calling list an call at least 3 times a week!"[26]
- "I receive, no kidding, at least 3 calls a week from this company a the warranty on a car that I haven't owned in over 3 years. This has been going for almost a year. I have repeatedly asked/demanded/begged them to remove my phone number from their list with promises that it will be done… My phone number is already listed on the Do Not Call Registry…"[27]
- "They are constantly calling me and harassing me. If I ask them to not call me anymore and I am on the do not call list. They call back the next day."[28]
- "Calls my phone number at least 2 times a day asking about a car I do not own. 0/5 stars"[29]

**Telemarketing Complaint Sites:**

- "Received a call this morning, a guy I could barely understand said he was going 'over my file' on my 2011 Ford. Already knew what he was going to

---

[25] https://www.bbb.org/us/nj/allenhurst/profile/auto-warranty-processing/ncwc-inc-0221-11001474/customer-reviews
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

say so I said 'I don't need an extended warranty, thank you.' Click. I receive these calls for auto warranties from random numers across the US."[30]

- "Called from US dealer services asking about a dodge journey I don't even own. It's a scam caller ID says its from Glendale, CA"[31]
- "Silent call."[32]
- "Car warranty expired. Trying to get money, foreign accent."[33]
- "too many calls"[34]

---

[30] https://800notes.com/Phone.aspx/1-818-572-1950/2

[31] *Id.*

[32] https://www.shouldianswer.com/phone-number/8185721950

[33] *Id.*

[34] *Id.*

## PLAINTIFF GAY'S ALLEGATIONS
### Consistent with Direction Provided by Shaftel and Freiberg, US Dealer Services' Agents Cold Called Plaintiff's Cell Phone Number Using a Pre-Recorded message to Solicit His Business

43.     For months prior to July 2020, Plaintiff received many unsolicited, unwanted calls from telemarketers regarding extended car warranties.

44.     The calls were pre-recorded, featuring a message about the impending expiry of Plaintiff's vehicle.

45.     Plaintiff would press '2' to stop the calls, or whichever number the pre-recorded message would indicate to stop the calls.

46.     Despite these efforts that Plaintiff Gay made to stop the calls, the calls still continued.

47.     On July 14, 2020 at 9:55 AM, Plaintiff received an unsolicited, pre-recorded call to his cell phone from, or on behalf of US Dealer Services using phone number 505-336-5396.

48.     The call featured the exact same pre-recorded message that Plaintiff had heard in the past calls.

49.     This time, to find out who was harassing him with unsolicited calls to his cell phone, Plaintiff pressed '1' to speak to an agent.

50.     Plaintiff acted like he was interested in getting a quote.

51.     During his interaction with the agent, Plaintiff asked which company he was dealing with. The agent told him the company is US Dealer Services.

52.     Plaintiff then asked what the company website is and was told he could visit USDealerServices.com, which is the website for Defendant US Dealer Services

53.     Plaintiff visited this website and confirmed that it was functional and correct. He then put an end to the call.

54.     Plaintiff Gay never consented to receiving solicitation calls from any of the Defendants.

55.     Plaintiff was not looking to solicit the services of any extended car warranty companies.

56.     The unauthorized telephone calls made by and on behalf of the Defendants, as alleged herein, have harmed Plaintiff Gay in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

57.     Seeking redress for these injuries, Plaintiff Gay, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited pre-recorded phone calls to cellular telephones.

## CLASS ALLEGATIONS
### Class Treatment Is Appropriate for Plaintiff's TCPA Claim

58.     Plaintiff Gay brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called (2) using a pre-recorded voice message (3) for substantially the same reason Defendants called Plaintiff, and (4) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

**Pre-recorded Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present (1) the Defendants (or an agent acting on behalf of the Defendants) called, (2) on the person's cellular phone (3) using a pre-recorded message, (4) after they informed the Defendants (or their agents) that they no longer wished to receive phone calls from the Defendants.

59.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which any Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff Gay anticipates the need to amend the Class definitions following appropriate discovery.

60.     **Numerosity**: On information and belief, there are thousands of members of the Classes such that joinder of all members is impracticable.

61.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Gay and the Classes, and those questions

predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    a.   whether agents working on behalf of Shaftel and Freiberg used an automatic telephone dialing system to place pre-recorded voice message phone calls to Plaintiff and the members of the Classes;

    b.   whether the agents made those calls without prior express written consent;

    c.   whether the agents continued to place calls using a pre-recorded voice message to Plaintiff and the members of the Classes despite asking for the calls to stop;

    d.   whether Shaftel and Freiberg are vicariously liable for the agents' calls; and

    e.   whether Defendants' conduct was willful or knowing, entitling the class to treble damages.

62. **Adequate Representation**: Plaintiff Gay will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Gay has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff Gay and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Gay nor his counsel have any interests adverse to the Classes.

63.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Pre-recorded No Consent Class)

64.     Plaintiff repeats and realleges paragraphs 1 through 63 of this Complaint and incorporates them by reference.

65.     Defendants and/or their agents transmitted unwanted solicitation telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

66.     These pre-recorded voice calls were made *en masse* without the prior express written consent of Plaintiff and the other members of the Pre-recorded No Consent Class.

67.     The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Pre-recorded Stop Class)**

68.     Plaintiff repeats and realleges paragraphs 1 through 63 of this Complaint and incorporates them by reference.

69.     Defendants and/or their agents made unwanted solicitation telephone calls to telephone numbers belonging to Plaintiff and the other members of the Pre-recorded Stop Call Class after being told to stop calling.

70.     These solicitation telephone calls were made *en masse*.

71.     The Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Gay, individually and on behalf of the Classes, pray for the following relief:

72.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Gay as the representative of the Classes; and appointing his attorneys as Class Counsel;

73.     An award of actual and/or statutory damages and costs;

74.    An order declaring that Defendants' actions, as set out above, violate the

TCPA;

75.    An injunction requiring Defendants to cease all unsolicited calling activity,

and to otherwise protect the interests of the Classes; and

76.    Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Gay requests a jury trial.

Respectfully Submitted,

**MICHAEL GAY**, individually and on behalf of
those similarly situated individuals

Dated: December 30, 2020                By:   /s/ *Blake Dugger*
Blake J. Dugger, Esq.
Law Office of Adam Oakey
714 Tijeras NW
Albuquerque, NM 87102
Telephone: (505) 433-4953
bdugger@oakeylawoffice.com

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (720) 213-0675

*Attorney for Plaintiff and the Class*

*\*Pro Hac Vice motion forthcoming*